**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

**TALISHA VALDEZ, on behalf of herself**
**and others similarly situated, and**
**JENNIFER BLACKFORD on behalf of herself**
**And others similarly situated,**

      **Plaintiffs,**

          **Civil Action No.**

**v.**

**MICHELLE LUJAN GRISHAM,**
**Officially and Individually, Acting Under the Color of Law,**
**and**
**DAVID SCRASE,**
**Officially and Individually, Acting Under the Color of Law,**

      **Defendants.**

**<u>VERIFIED CLASS ACTION COMPLAINT FOR CIVIL RIGHTS</u>**
**<u>VIOLATIONS UNDER 42 U.S.C.A. §1983; VIOLATIONS OF RIGHTS</u>**
**<u>PROTECTED BY THE NEW MEXICO CIVIL RIGHTS ACT;</u>**
**<u>EMERGENCY REQUEST FOR A TEMPORARY RESTRAINING ORDER;</u>**
**<u>REQUST FOR PRELIMINARY INJUNCTION, PERMANANT INJUNCTIVE</u>**
**<u>RELIEF AND DAMAGES</u>**

COMES NOW Plaintiffs hereby respectfully move this Honorable Court for a temporary restraining order, preliminary injunction, and permanent injunctive relief pursuant to Federal Rule of Civil Procedure 65, and damages and states as follows in support thereof.

**INTRODUCTION**

Father of the Bill of Rights and 4th U.S. President, James Madison, famously stated that "crisis is the rallying cry of tyrants." Even today in modern day New Mexico, the last public health orders pronounced by the Governor through her Acting Secretary of Health prove that statement is as true today as it was for the revolutionary period of our Republic's history. Not since the Japanese internment camps that so darkly cloud our modern history, set

out by President Franklin Roosevelt and upheld by the U.S. Supreme Court in *Korematsu v. United States*, 323 U.S. 214, 65 S. Ct. 193, 89 L. Ed. 194 (1944), does anything resembling the punitive tyrannical efforts contained in the public health orders at issue in this case even remotely arrive on the horizon of our American Liberty.  Yet here, a tyrannical governor is willing to punish children and destroy livelihoods to punish adults that would dare to refuse her orders that advance her agenda of violating the right to bodily integrity.  We stand at the precipice of losing the liberty that is foundational to our Country and these brave Plaintiffs in this complaint respectfully beg this Court to stop that destruction of liberty.  Thomas Paine in <u>American Crisis</u> stated that: "tyranny, like hell, is not easily conquered, yet, we have this consolation with us, that the harder the conflict, the more glorious the triumph."

## PARTIES AND JURISDICTION

1.      Plaintiff Talisha Valdez is a resident of Union County, New Mexico.  She is the County Extension Agent and the mother of two daughters who entered to show their 4-H animals at the New Mexico State Fair.

2.      Plaintiff Jennifer Blackford is resident of Bernalillo County, New Mexico.  She is a registered nurse employed by Presbyterian Hospital in Albuquerque.

1.      Defendant Michelle Lujan Grisham is the Governor of New Mexico, and she is sued in her individual and official capacities.

2.      Defendant Dr. David Scrase, M.D. is the Human Services Secretary and is the acting New Mexico Department of Health Secretary. He is sued in his individual and official capacities.

3.      The Court has subject matter jurisdiction under 28 U.S.C. § 1331 and 42 U.S.C. § 1983 because, Plaintiffs allege a current and imminent continuing violation of their rights under

the laws and Constitution of the United States.

4.     The Court may declare the legal rights and obligations of the parties in this action pursuant to 28 U.S.C. § 2201 because this action presents an actual controversy within the Court's jurisdiction.

5.     Venue is proper in this judicial district under 28 U.S.C. § 1391(b). All Defendants are residents of and/or perform their official duties in this district. In addition, all of the events giving rise to the claims in this Complaint arose in this district.

**GENERAL ALLIGATIONS**

8.     On August 17, 2021, Acting Cabinet Secretary David R. Scrase, M.D. issued the Public Health Emergency Order Requiring All School Workers Comply with Certain Health Requirements and Requiring Congregate Care Facility Workers, Hospital Workers, and Employees of the Office of the Governor Be Fully Vaccinated. (Exhibit 1).

9.     As a result of the above-mentioned Public Health Order, Plaintiff Blackford and other Congregate Care Facility Workers, Hospital Workers, and Employees of the Office of the Governor similarly situated (likely numbering in the 1000) who are not currently vaccinated must be received their first experimental EUA shot within ten days of the effective date or are required to be terminated from their employment in order for the employers to be lawfully compliant.

10.     Plaintiff Blackford is currently working as registered nurse for Presbyterian Hospitals, based upon her medical training as well as experience as a nurse for 10 years and her own independent research she is opposed to receiving the EUA covid vaccines.  *See* Exhibit 2, Declaration of Jennifer Blackford.

11.     The Public Health Order ("PHO") does not give an exemption for those in the affected professions to abstain from being vaccinated without falling under one of the prescribed

exemptions.

12.     The statute granting the Food and Drug Administration (FDA) the power to authorize a medical product for emergency use requires that the person being administered the unapproved product be advised of his and her right to refuse administration of the product. *See* 21 U.S.C. § 360bbb-3(e)(1)(A) ("Section 360bbb-3").

13.     Covid-recovered individuals have equal to or better immunity response than vaccinated individuals.[1234] Moreover, covid-recovered individuals with natural immunity do not benefit from receiving the vaccines.[5]

14.     The PHO does not account for or recognize the health implications associated to individuals that have natural immunity.

15.     All three of the currently available Covid vaccines for the United States are available under an "Emergency Use Authorization" or "EUA" on an emergency declaration from the Secretary of Health under 21 U.S.C.A. § 360bbb-3.

16.     Only the Pfizer Covid vaccine is currently authorized for children aged 12 to 18 years old.[6]

17.     Under the PHO, individuals that qualify to receive the Covid vaccine must either be fully vaccinated or be exempt under one of the three exceptions and possess a covid negative test from within 48 hours to enter upon the grounds of the New Mexico State Fair Grounds.

18.     In order to receive the second shot of the Pfizer vaccine 21 days must have passed from the date that the individual received the first shot of the 2 doses of the vaccine.[7]  In order to

---

[1] https://www.cell.com/cell/pdf/S0092-8674(21)00007-6.pdf
[2] https://www.nature.com/articles/d41586-021-01442-9
[3] https://pubmed.ncbi.nlm.nih.gov/34046033/
[4] https://www.israelnationalnews.com/News/News.aspx/309762
[5] https://www.medrxiv.org/content/10.1101/2021.06.01.21258176v2
[6] https://www.cdc.gov/coronavirus/2019-ncov/vaccines/recommendations/adolescents.html
[7] https://www.cdc.gov/coronavirus/2019-ncov/vaccines/second-shot.html

be considered fully vaccinated it must have been 2 weeks since your second Pfizer shot.[8]  Thus, if a child receives their first shot on August 18, 2021 (the day following issuance of the PHO) that child is not fully vaccinated and able to enter the New Mexico State Fair Grounds until September 22, 2021, which is 3 days after the New Mexico State Fair ends.

19.     The PHO is purely punitive towards parents and the children of parents that have previously exercised their fundamental liberty to raise their children in a manner they chose that does not include injecting their child or children with an experimental EUA vaccine.

20.     Plaintiff Valdez and her children have entered into a contract to exhibit their 4-H animals at the New Mexico State Fair. *See* Exhibit 3, Declaration of Talisha Valdez.

21.     Plaintiff Valdez has two daughters, Raley (age 11) and Riata (age 12), who have entered as exhibitors 4 pigs and 3 lambs to compete at the New Mexico State Fair.  The daughters have expended approximately at least 150 hours per month on their animals and over $9000.00 to prepare their animals for the State Fair.

22.     There is no way that Plaintiff Valdez, who is not vaccinated, or her 12-year-old daughter may enter the fairgrounds to exhibit the animals that they paid entry fees to enter.

23.     Upon information and belief, there are numerous (more than 35 families) that are punished by the PHO in an identical fashion.

24.     In addition, Plaintiff Valdez is prohibited from performing an integral part of her job responsibilities as a Union County Agricultural Extension Agent by her exclusion from the New Mexico State Fair Grounds.

---

[8] https://www.cdc.gov/coronavirus/2019-ncov/vaccines/second-shot.html

## CLASS ACTION ALLEGATIONS

**A.      GENERAL CLASS ACTION ALLEGATIONS**

25.     Plaintiff Talisha Valdez brings this action, on behalf of herself and all others similarly situated with children registered to exhibit animals at the 2021 New Mexico State Fair, for the purpose of asserting the claims alleged in this complaint on a common basis.

26.     Plaintiff Jennifer Blackford brings this action, on behalf of herself and all others similarly situated that work in healthcare, congregate care or the Office of the Governor for the purpose of asserting the claims alleged in this complaint on a common basis.

27.     A class action is a superior means, and the only practicable means, by which Plaintiffs and unknown class members can challenge the State of New Mexico's actions, acting through her Governor and the Governor's cabinet members, restricting the rights (constitutional and statutory) of Plaintiffs and similarly situated class members without providing them due process of law.

28.     This action is brought and may properly be maintained as a class action pursuant to Federal Rule of Civil Procedure 23(a), and 23(b)(2).

29.     This action satisfies the numerosity, commonality, typicality, and adequacy requirements of Rule 23(a), as well as the predominance and superiority requirements of Rule 23(b)(2), where applicable.

30.     Plaintiffs propose two (2) classes seeking declaratory and injunctive relief as well as damages.

31.     The Declaratory and Injunctive Relief Classes are defined as: 1) the parents of the New Mexico children who are or will be subject to the loss of the ability to exhibit their animal(s) at the junior livestock competition of the New Mexico State Fair, and 2) healthcare

workers, congregate care workers and workers in the Office of the Governor who are or will lose their livelihoods if they decline to receive the EUA vaccines or decline to share their vaccination status.

**B.      RULE 23(A)(1): NUMEROSITY**

32.      The class is so numerous that joinder is impracticable.

33.      The individuals in the class represented by Plaintiff Valdez are parents of children that will be punished for their parents exercising their fundamental liberty interest to raise their children in the way they see fit and whose children's contracts to exhibit their animal in competition at the State Fair will be impaired by the actions of the State of New Mexico acting through Defendants.

34.      The individuals in the class represented by Plaintiff Blackford are employees that will lose their employment in their chosen professions because they have elected not to receive the EUA vaccinations mandated by the State of New Mexico acting through Defendants.

35.      The total number of individuals in each of the classes will separately number in the 100's if not the 1000's in the case of the Blackford class.

**C.      RULE 23(A)(2): COMMONALITY**

36.      Common questions of law or fact exist as to all members of the classes.

37.      All class members seek relief on the common legal question of whether New Mexico's actions violate their constitutional or statutory rights.

38.      All class members also present common factual questions.

39.      All members of the declaratory and injunctive relief class seek relief on the common legal question of whether a declaratory judgment and injunctive relief are appropriate relief for the asserted constitutional (both federal and state) violations.

**D.      RULE 23(A)(3): TYPICALITY**

40.      Plaintiffs' claims are typical of the claims of other respective members of the classes.

41.      Like all members of the classes, Plaintiffs claim that the actions of the Governor, and her Secretary of Health are depriving them of equal protection, due process of law and of constitutional protections for their preexisting contracts.

42.      Like all members of the declaratory and injunctive relief class, Plaintiffs seek a declaratory judgment that the actions of the Defendants are unlawful and unconstitutional and an injunction preventing the Defendants from continuing any such action.

43.      There is nothing distinctive about Plaintiffs claim for declaratory relief or injunctive relief that would lead to a different result in their case than in any case involving other class members.

**E.      RULE 23(A)(4): ADEQUACY**

44.      Plaintiffs are adequate representatives of the classes because their interest in the vindication of their constitutional and statutory rights is entirely aligned with the interests of the other class members, each of whom has the same constitutional or statutory claims.

45.      Plaintiffs are a member of the respective classes, and their interests do not conflict with those of the other class members with respect to any claims.

46.      Plaintiffs are represented by attorneys from Western Agriculture, Resource and Business Advocates, LLP who have extensive experience litigating complex civil rights matters in federal court and detailed knowledge of New Mexico's law and other relevant issues.

47.      Class counsel has undertaken a detailed investigation of New Mexico's policies, practices, and procedures as they relate to federal constitutional requirements.

48.      Class counsel has developed and continues to develop relationships with Plaintiffs

and others similarly situated.  The interests of the members of the class will be fairly and adequately represented by Plaintiffs and their attorneys.

### F.        RULE 23(B)(2): DECLARATORY AND INJUNCTIVE RELIEF CLASS

49.    A class action is appropriate for the declaratory and injunctive relief class under Rule 23(b)(2) because Defendants have acted on grounds that apply generally to the classes—namely the Governor's PHO interferes with the statutory and constitutional rights of the members of the class.

50.    The classes seek declaratory and injunctive relief to enjoin the State of New Mexico acting through her Governor and the Secretary of Health from denying class members their fundamental liberty interest in engaging in the profession of their choosing, to raise their children as they see fit and to have their existing contracts performed without interference from the state.

51.    Class status is particularly appropriate because there is an acute risk that any individual class member's claim for declaratory and injunctive relief will become moot before the litigation is finally resolved.

### G.        RULE 23(B)(3): DAMAGES CLASS

52.    Both classes of Plaintiffs will have suffered either or both the loss of employment and the loss of the benefits of their contracts.

### COUNT I: VIOLATION OF FEDERAL FOOD, DRUG AND COSMETIC ACT

53.     Plaintiffs incorporate the preceding paragraphs as though fully set forth herein.

54.    The Mandatory COVID-19 Vaccination Directive issued by Defendants is in direct violation of Federal law, specifically 21 U.S. Code § 360bbb-3 – Authorization for medical products for use in emergencies. That law states that where a medical product is "unapproved" then no one may be mandated to take it. At Section (e)(1)(A) of the a forementioned statute it

states:

> With respect to the emergency use of an unapproved product, the Secretary, to the extent practicable given the applicable circumstances described in subsection (b)(1), shall, for a person who carries out any activity for which the authorization is issued, establish such conditions on an authorization under this section as the Secretary finds necessary or appropriate to protect the public health, including the following:

a. Appropriate conditions designed to ensure that the health care professionals administering the product are informed –
b. of the significant known and potential benefits and risks of the emergency use of the product, and of the extent to which such benefits and risks are unknown; and
c. of the alternatives to the product that are available, and of their benefits and risks.
d. Appropriate conditions designed to ensure that individuals to whom the product is administered are informed—
e. that the Secretary has authorized the emergency use of the product;
f. of the significant known and potential benefits and risks of such use, and of the extent to which such benefits and risks are unknown; and
g. **of the option to accept or refuse administration of the product,** of the consequences, if any, of refusing administration of the product, and of the alternatives to the product that are available and of their benefits and risks. (emphasis added).

*Id.* (emphasis added)

55.     The Defendants violated at least two quoted sections (a and c). The Defendants did not advise Plaintiffs of the "known and potential benefits and risks of such emergency use of the product, and of the extent to which such benefits and risks are unknown" of the COVID-19 experimental vaccine.

56.     It is unlawful and highly questionable for the Defendants to require the Plaintiffs or their children to take the emergency experimental vaccine after more than 1.5 years have elapsed since the event giving rise to the emergency occurred.

### COUNT II: VIOLATION OF EQUAL PROTECTION – 42 U.S.C. § 1983

57.     Plaintiffs incorporate the preceding paragraphs as though fully set forth herein.

58.     The Equal Protection Clause requires governments to act in a rational and

nonarbitrary fashion.

59.     Defendants' actions create a class of individuals who, though they are exempted by federal law from being required to receive the vaccine, or enjoy a fundamental liberty interest in raising their children in the manner they deem fit, are punished for being unvaccinated and discriminated against without any real justifiable basis and without providing them any alternative.

60.     The PHO is <u>not</u> rationally related to achieving a compelling government purpose.

61.     Defendants' actions are and have been therefore a violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

**COUNT III – SUBSTANTIVE DUE PROCESS - 42 U.S.C. § 1983**

62.     Plaintiffs incorporate the preceding paragraphs as though fully set forth herein.

63.     The Plaintiffs have protected liberty interests in their right to live without arbitrary governmental interference under the Fourteenth Amendment, to bodily integrity under the Fourth Amendment, to raise their children as they see fit and to engage in their chosen professions under the Fourteenth Amendment.

64.     Substantive Due Process prevents the government from engaging in conduct that "shocks the conscious" or that interferes with fundamental liberty without narrowly tailoring such interference to achieve a compelling government interest which must withstand strict scrutiny.

65.     Defendants' actions constitute official policy, custom and practice of the State of New Mexico. Defendants' actions are not narrowly tailored as many individuals similarly situated to Plaintiffs are covid-recovered and the actions violate federal law which requires that it must be an option not to be required to receive the vaccination.

66.     Defendants' actions do not comport with the traditional ideas of fair play and decency.

67.     Plaintiffs have the right to pursue lawful employment as they shall determine and be free of unreasonable governmental interference.

68.     The PHO imposed by the Defendant will cause Plaintiffs and other similarly situation citizens of New Mexico to lose their livelihoods and to suffer the loss of their bodily integrity.

### COUNT IV - PROCEDURAL DUE PROCESS - 42 U.S.C. § 1983

69.     Plaintiffs incorporate the preceding paragraphs as though fully set forth herein.

70.     The Fourteenth Amendment to the United States Constitution forbids a state from depriving anyone of life, liberty, or property without due process of law.

71.     No due process protections have been afforded to Plaintiffs, or any citizen of New Mexico, as required by the United States Constitution of a pre-deprivation or post deprivation process that allows for any opportunity, much less a meaningful opportunity, to be heard and address the propriety of the government's actions.

72.     All fundamental rights comprised within the term liberty, including but not limited to, the rights to be free from bodily restraint, the right to contract and engage in the common occupations of life, the right to acquire useful knowledge, to worship God according to the dictates of one's own conscience, and to generally enjoy the privileges long associated with the rights of free people are guaranteed substantive due process rights under the Fourteenth Amendment.

73.     The August 17, 2021 Order deprives Plaintiffs, and many residents of New Mexico, of fundamental liberties without due process of law, based solely upon discretion of the Defendants.

### COUNT V – VIOLATIONS OF U.S.C.A. CONST. ART. I § 10

74.     Plaintiffs incorporate the preceding paragraphs as though fully set forth herein.

75.     The actions of Defendants to penalize parents and children including Plaintiff Valdez and others similarly situated that have previously elected not to vaccinate themselves or their children by excluding them from the benefits open to all to participate in the New Mexico State Fair constitutes a bill of attainder.

76.     The actions of Defendants to exclude Plaintiff Valdez, her children and others similarly situated impairs the contract established with consideration exchanged between them and Expo New Mexico to participate in the New Mexico State Fair junior livestock competitions.

77.     The actions of Defendants to require the termination of unvaccinated individuals that do not meet or request an exemption impair Plaintiff Blackford's employment contract and others similarly situated.

78.     Plaintiff and others similarly situated have been damaged by these actions of Defendants and are entitled compensatory and punitive damages in an amount to be proven at trial.

### COUNT VI – VIOLATION OF RIGHTS SECURED BY THE NEW MEXICO CONSTITUTION UNDER THE NEW MEXICO CIVIL RIGHTS ACT NMSA 1978 § 41-4A-3 (PENDENT JURISDICTION)

79.     Plaintiffs incorporate the preceding paragraphs as though fully set forth herein.

80.     Plaintiffs enjoyed a right to bodily integrity under Article II Section 10 of the New Mexico Constitution.

81.     Defendants' actions to unreasonably and contrary to federal law require that EUA vaccine injection be mandatory in order to maintain employment or enjoy the benefits of an existing contract violates Art. II Sec. 10.

82.      Plaintiffs enjoy a right to due process and equal protection under Article II Section 18 of the New Mexico Constitution.

83.     Defendants' actions to unreasonably and contrary to federal law require that EUA

vaccine injection is mandatory in order to maintain employment or enjoy the benefits of an existing contract deprived Plaintiffs of their owing due process and discriminated against them on the basis of the individual choice to vaccinate themselves or their children.

84.     Plaintiffs enjoy a right to contract free from government impairment Article II Section 19 of the New Mexico Constitution.

85.     Defendants' actions to unreasonably and contrary to federal law require that EUA vaccine injection is mandated impair the existing employment contracts of Plaintiff Blackford and others similarly situated and impairs the contracts of Plaintiff Valdez and her children as well as others similarly situated to exhibit their animals at the State Fair in violation of the New Mexico Constitution's Bill of Rights.

86.     The violation of rights secured by the New Mexico Constitution is actionable under the New Mexico Civil Rights Act NMSA § 41-4A-1 *et seq.* which provides for damages and attorney's fees for violations of those rights in an amount to be proven at trial.

## JURY DEMAND

Plaintiffs request a trial by a jury of twelve (12) persons.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs demand judgment in their favor, against Defendants jointly and severally, and seek relief as follows:

(1)     a Declaratory Judgment that issuance and enforcement of the August 17, 2021 Public Health Order requiring certain professions be vaccinated is unconstitutional for the reasons stated herein, and that the actions of the Defendants were unlawful and unconstitutional;

(2)     a Declaratory Judgment that issuance and enforcement of the August 17, 2021

Public Health Order excluding families from the New Mexico State Fair Ground contracted to exhibit animals in the junior livestock competitions is unconstitutional for the reasons stated herein, and that the actions of the Defendants were unlawful and unconstitutional;

(3)     a temporary restraining order to prohibit Defendants from enforcing public health orders against the Plaintiffs and other putative class members that are similarly situated

(4)     a preliminary and permanent injunction to prohibit Defendants from enforcing public health orders in the arbitrary and capricious manner and fashion engaged by Defendants

(5)     a declaration that the rights of the Plaintiffs and the citizens of New Mexico have been violated by the various actions of the Defendants and the said Defendants are enjoined from engaging in such violations and declaring them to be null and void ab initio;

(6)     award of costs and expenses, including reasonable attorneys' fees under 42 U.S.C. § 1983 and 1988; and,

(7)     actual and punitive damages; and

(8)     such other relief as this Court deems appropriate.

## REQUEST FOR TEMPORARY RESTRAING ORDER

### COVID-19 Investigational Vaccine Not Approved by the FDA

On December 11, 2020, the United States Food and Drug Administration ("FDA") issued the first emergency use authorization ("EAU") for an experimental vaccine for the prevention of coronavirus disease 2019 ("COVID-19"). Emergency use authorization is not an FDA approval.

The experimental vaccine has been in existence for less than a year. The first reported use of the experimental vaccine was December 14, 2020.

It is undisputed that the vaccine being forced upon Plaintiffs is "unapproved". Even though the FDA granted emergency use authorization for the Pfizer/BioNTech and Moderna vaccines in December 2020, the clinical trials the FDA will rely upon to ultimately decide whether to license these and other COVID-19 experimental vaccines are still underway and are designed to last for approximately two (2) years to collect adequate data to establish if these vaccines are safe and effective enough for the FDA to approve. The abbreviated timelines for the emergency use applications and authorizations means there is much the FDA does not know about these products even as it authorizes them for emergency use, including their effectiveness against infection, death, and transmission of SARS-CoV-2, the virus that is allegedly the cause of the COVID disease. Given the uncertainty about the COVID-19 experimental vaccines, the FDA requires that each dose of the experimental vaccine shall have a label that states that the product is an emergency use authorization, that the EUA is explicit that each is "an investigational vaccine not licensed for any indication" and that all "promotional material relating to the Covid-19 Vaccine clearly and conspicuously...state that this product has not been approved or licensed by the FDA, but has been authorized for emergency use by FDA". (Exhibit "A-1", EAU letter for Pfizer).

> The FDA on their website has stated the following:
> "FDA believes that terms and conditions of an EAU issued under section 564 preempt state or local law, both legislative requirement and common-law duties, that impose different or additional requirements on the medical product for which the EAU was issued in the context of the emergency declared under section 564... In an emergency, it is critical that the conditions that are part of the EAU or an order or waiver issued pursuant to section 564A – those that FDA has determined to be necessary or appropriate to protect the public health-be strictly followed, and no additional conditions be imposed."

In August 2020, the Centers for Disease Control and Prevention ("CDC") published a meeting of the Advisory Committee on Immunizations and Respiratory Diseases, Dr. Amanda

Cohn stated (@1:14:40):

> "I just wanted to add that, just wanted to remind everybody, that under an Emergency Use Authorization, an EAU, vaccines are not allowed to be mandatory. So, early in the vaccination phase, individuals will have to be consented and they won't be able to be mandated."

Here, Plaintiffs are in imminent and immediate danger of being terminated from their jobs for refusing to take an experimental vaccine that is being provided under an EAU.

### COVID-19 Vaccine was Rushed

On January 30, 2020, the World Health Organization ("WHO") declared a "public health emergency of international concern over the global outbreak" of COVID-19. Among other recommendations, WHO called for the accelerated development of "vaccines", therapeutics and diagnostics." The following day, U.S. Health and Human Services ('HHS') Secretary, Alex Azar, declared a national Public Health Emergency ("PHE") retroactive to January 27, 2020, "to aid the nation's healthcare community in responding" to COVID-19. By then, HHS was already collaborating with the pharmaceutical industry regarding the development of vaccines.

In April 2020, the National Administration announced Operation Warp Speed ("OWS") – a public/private partnership to develop and distribute a vaccine for COVID-19 by the end of 2020 or early 2021. The process for developing a vaccine normally takes place in several phases, over a period of years.

The general stages of the development cycle for a vaccine are:

1. Exploratory stage;
2. Pre-clinical stage (animal testing);
3. Clinical development (human trials - see below);
4. Regulatory review and approval;
5. Manufacturing; and
6. Quality control[9]

---

[9] https://www.cdc.gov/vaccines/basics/test-approve.html.

The timeline set by OWS telescoped what would normally take years of research into a matter of months. Commercial vaccine manufacturers and other entities proceeded with the development of COVID-19 vaccine candidates using different technologies including RNA, DNA, protein, and viral vectored vaccines. Two potential vaccines emerged early on as likely candidates: one developed by Moderna ("Moderna Vaccine") and the other by Pfizer ("Pfizer Vaccine") with both announcing Phase III trial results in November 2020. In early 2021, Janssen Biotech, Inc., submitted Phase III trial results for its adenovirus vector vaccine ("Janssen Vaccine").

### Experimental COVID-19 Vaccines Have Not Received Final Approval from the FDA-Plaintiffs are not given a choice on whether or not they want to participate in this experimental trial.

None of the currently available experimental vaccines for COVID-19 has received final approval from the FDA. Rather, each one of the COVID-19 experimental vaccines is an unapproved product that has been granted EAU. The FDA refers to the COVID-19 experimental vaccine as "investigational products", meaning they remain classified as experimental.

The statute granting the FDA the power to authorize a medical product for emergency use requires that the person being administered the unapproved product be advised of his and her right to refuse administration of the product. *See* 21 U.S.C. § 360bbb-3(e)(1)(A) ("Section 360bbb-3"). Additionally, terms and conditions of EAUs preempt state and local laws that would impose obligations that are inconsistent with those terms and conditions. Here, Defendants do not inform Plaintiffs of their right to refuse administration of the experimental vaccine. In fact, Plaintiffs are not given a choice as to whether or not they want to participate in the experimental vaccine trials. The only choice the Plaintiffs have is to join the experimental trial and be injected with the experimental vaccine or be fired.

**Long Standing Public Policy Against Forcing Plaintiffs to Participate in Vaccine Trial**

Section 360bbb-3 reflects a fundamental, public policy goal of striking a balance between giving people the option of having access to experimental medical products during public emergencies, while also assuring that no one is forced to accept administration of such and the experimental medical product. Section 360bbb—further recognizes the well-settled doctrine that medical experiments, better known in modern parlance as "clinical research", may not be performed on human subjects without the express, informed consent of the individual receiving treatment.

**Plaintiffs Have a Liberty Interest in Engaging in Their Chosen Profession That Requires Due Process of Law Before They are Deprived of Liberty.**

Plaintiffs have a liberty interest in engaging in their chosen profession. Defendants disagree because otherwise their actions most certainly run afoul of the Due Process Clause's protections by depriving Plaintiffs in the manner they did of their ability to earn a livelihood in the occupation of their choosing.[10] For example, the United States Supreme Court in *Barry v. Barchi* has opined as to the constitutionally protected property interest in engaging in one's chosen profession of horse racing, stating "Plaintiffs have a liberty interest in pursuing their profession of horse racing and are entitled to due process of law if they are to be lawfully denied an opportunity to do so." *Barry v. Barchi,* 443 U.S. 55, 64, 99 S.Ct. 2642, 61 L.Ed.2d 365 (1979).

Thus, the right of citizens to support themselves by engaging in a chosen occupation is deeply rooted in our nation's legal and cultural history and has long been recognized as a

---

[10] "The right to work, I had assumed, was the most precious liberty that man possesses. Man has indeed as much right to work as he has to live, to be free, to own property. The American ideal was stated by Emerson · in his essay on Politics, 'A man has a right to be employed, to be trusted, to be loved, to be revered.' It does many men little good to stay alive and free and propertied, if they cannot work. To work means to eat. It also means to live. For many it would be better to work in jail, than to sit idle on the curb. The great values of freedom are in the opportunities afforded man to press to new horizons, to pit his strength against the forces of nature, to match skills with his fellow man." *Barsky v. Board of Regents of University of State of New York,* 347 U.S. 442, 472 (1954) (Douglas, J, dissenting).

component of the liberties protected by the Fourteenth Amendment. Over a century ago, the Supreme Court recognized that "[i]t requires no argument to show that the right to work for a person living in the common occupations of the community is of the very essence of the personal freedom and opportunity that it was the purpose of the [Fourteenth] Amendment to secure." *Truax v. Raich*, 239 U.S. 33, 41, 36 S.Ct. 7, 60 L.Ed. 131 (1915) (holding that a state anti-alien labor statute violated both equal protection and due process). Later, in striking down a law banning the teaching of foreign languages in school, the Supreme Court observed that the Fourteenth Amendment guaranteed the right, *inter alia*, "to engage in any of the common occupations of life ...." *Meyer v. Nebraska*, 262 U.S. 390, 399, 43 S.Ct. 625, 67 L.Ed. 1042 (1923). Despite later jurisprudence following the *Lochner* era, *Lochner v. New York*, 198 U.S. 45, 25 S.Ct. 539, 49 L.Ed. 937 (1905), de-emphasizing economic substantive due process, our Supreme Court has never repudiated the recognition that a citizen has the right to work for a living and pursue his or her chosen occupation.

The Third Circuit has recognized "[t]he right to hold specific private employment and to follow a chosen profession free from unreasonable governmental interference comes within both the 'liberty' and the 'property' concepts of the Fifth and Fourteenth Amendments." *Piecknick v. Comm. of Pa.*, 36 F.3d 1250, 1259 (3d. Cir. 1994) (citing *Greene v. McElroy*, 360 U.S. 474, 492, 79 S.Ct. 1400, 3 L.Ed.2d 1377 (1959); *Truax*, 239 U.S. at 41, 36 S.Ct. 7). However,

> [t]he Constitution only protects this liberty from state actions that threaten to deprive persons of the right to pursue their chosen occupation. State actions that exclude a person from one particular job are not actionable in suits ... brought directly under the due process clause. It is the liberty to pursue a calling or occupation, and not the right to a specific job, that is secured by the Fourteenth Amendment.

*Id.* (internal citations and quotation marks omitted). There is no question, then, that the Fourteenth Amendment recognizes a liberty interest in citizens—the Plaintiffs here—to pursue their chosen

occupation. The dispositive question is not whether such a right exists, but rather, the level of infringement upon the right that may be tolerated.

Although federal courts have recognized the existence of a substantive due process right of a citizen to pursue a chosen occupation for over a century, there is little specific analysis on how that right should be weighed and what sort of test should be applied to allegedly infringing conduct. Plaintiffs do not dispute that as a matter of general consensus, courts generally treat government action purportedly violating the right to pursue an occupation in the same light as economic legislation and use the general standard of review applied to substantive due process claims. In reviewing a substantive due process claim, the "criteria to identify what is fatally arbitrary differ depending on whether it is legislation or a specific act of a government officer that is at issue." *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 846, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998). "Specific acts" are also known as "executive acts" in substantive due process jurisprudence. The Third Circuit has explained that "executive acts, such as employment decisions, typically apply to one person or to a limited number of persons, while legislative acts, generally laws and broad executive regulations, apply to large segments of society." *Nicholas v. Pa. State Univ.*, 227 F.3d 133, 139 n.1 (3d. Cir. 2000). Substantive due process challenges to a legislative act that do not implicate a fundamental right are reviewed under the rational basis test. *Dias v. City & Cty. of Denver*, 567 F.3d 1169, 1182 (10th Cir. 2009).

Moreover, the United States Constitution is unequivocal in Art. I Section 10 that the State (here New Mexico) may not enact Bills of Attainer or impair existing contracts, yet that is exactly the harm that Defendants visit on the these Plaintiffs by punishing Plaintiff Valdez and her children for not being vaccinated as well as others similarly situated including impairing their contracts with Expo New Mexico or impairing the employment contract of Plaintiff Blackford and other

similarly situated by requiring that employers terminate them from their chosen professions if they are not vaccinated.

**A Temporary Restraining Order is Necessary to Prevent Irreversible Harm**

Unless the Court enters this Temporary Restraining Order and Preliminary Injunction, New Mexicans will be forced to take an experiential vaccine in order to retain their employment and will forever lose the ability to exhibit their unique animals at the New Mexico State Fair. This government edict is punitive toward New Mexican's who have not yet been vaccinated or refuse to be vaccinated and to have their children vaccinated with an experimental EUA vaccine.

**I.      Standards for Issuance of a Preliminary Injunction**

A movant may obtain a preliminary injunction if: (1) the movant will be irreparably injured by denial of the relief; (2) the movant's injury outweighs any damage the injunction may cause the opposing party; (3) granting the preliminary relief would not be adverse to the public interest; and (4) there is a substantial likelihood of success on the merits. *Keirnan v. Utah Transit Auth.,* 339 F.3d 1217, 1220 (10th Cir. 2003) (citation omitted). For the reasons that follow, the standards for granting a temporary and preliminary injunction have been met in this case.

**II.     Plaintiffs are Likely to Succeed on the Merits.**

***A.   Defendants' Public Health Order Violates the Fourteenth Amendment's Due Process and Equal Protection Clauses, the Fourth Amendment's protection of Bodily Integrity as well as Article I Section 10 and the corresponding New Mexico Constitution provision in the Bill of Rights.***

To determine whether a government act violates the substantive component of the Due Process Clause or the Equal Protection Clause, courts begin by determining the proper level of scrutiny to apply for review. "Even though citizens of statutory counties are not a suspect class, we will still apply strict scrutiny if the state's classification burdens the exercise of a fundamental

right guaranteed by the U.S. Constitution. *Save Palisade FruitLands v. Todd*, 279 F.3d 1204, 1210 (10th Cir. 2002). An act passes strict scrutiny only if it "narrowly tailored to further a compelling government interest." *Id.* "If no heightened scrutiny applies, the statute need only be rationally related to a legitimate government purpose." *Id.* "In deciding whether to recognize additional classifications as suspect, courts traditionally look to see if the classification is 'based on characteristics beyond an individual's control,'[] and whether the class is 'saddled with such disabilities, or subjected to such a history of purposeful unequal treatment, or relegated to such a position of political powerlessness as to command extraordinary protection from the majoritarian political process.'" *Id.* (citations omitted).

### III.   The Plaintiffs Will Suffer Irreparable Injury if Injunctive Relief Is Denied

The loss of [constitutional] freedoms, *for even minimal periods of time*, unquestionably constitutes irreparable injury." *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1190 (10th Cir. 2003) (*quoting Elrod v. Burns*, 427 U.S. 347, 373 (1976)) (emphasis added); Plaintiffs if they are forced to be vaccinated face the harsh reality of being terminated from their employment and from engaging in their chosen profession. There is no adequate legal remedy for these "intangible harms." *Cmty. Television of Utah, LLC v. Aereo, Inc.*, 997 F. Supp. 2d 1191, 1210 (D. Utah 2014) ("Rather, the court looks to intangible harms that are difficult to quantify when it determines whether irreparable harm warrants a preliminary injunction). Moreover, deprivation of constitutionally protected rights—including the rights to due process and equal protection— inexorably creates irreparable harm. *See Elrod v. Burns* 427 U.S. 347, 373 (1976).; *see also Kikumura v. Hurley*, 242 F.3d 950, 963 (10th Cir. 2001) ("When an alleged constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary.") (citations omitted).

The fact that Due Process and Equal Protection rights are burdened if not outright denied, as they are in this case, establishes the preliminary injunction's "irreparable harm" standard. Thus, under the Tenth Circuit Court of Appeals' jurisprudence, irreparable injury has occurred and will continue to occur until an injunction issues.

**IV.     The Balance of Harms Favors Issuance of Injunctive Relief**

Plaintiff has established both likelihood of success on the merits as well as a clear irreparable injury. In addition, the balance of harms tips decidedly in favor of Plaintiff. In the Tenth Circuit, "the [government's] potential harm must be weighed against [plaintiffs'] actual [constitutional] injury." *Summum v. Pleasant Grove City*, 483 F.3d 1044, 1056 (10th Cir. 2007) *rvs'd other grounds by* 555 U.S. 460 (2009). Where the government's perception of harm is speculative and when the state permits the same speculative harm in other places, as it is here, such speculative harm cannot outweigh an injury to the Due Process, Equal Protection and State Constitutional Education rights of plaintiffs who have established a substantial likelihood of success on the merits.

If preliminary injunctive relief is not granted, and the Court later finds that the challenged laws impermissibly infringe constitutional rights, the Plaintiffs will have suffered irreparable harm. After the fact, this Court will be unable to make things right again. By contrast, if this Court grants preliminary injunctive relief and later finds against the Plaintiff, the Defendants will not have suffered any hardship that the Defendants do not currently countenance in the operation of hospitals, schools and other entities. Because the Defendants will not suffer more than speculative harm if an injunction is granted, and the Plaintiffs will suffer certain harm in the absence of injunctive relief, the balance of hardships favors the Plaintiff. When plaintiffs establish that a case raises constitutional issues, as the Plaintiffs have in this case, the Court should presume that the

balance of harms tips in their favor. *Sammartano v. First Judicial District Court*, 303 F.3d 959, 973 (9th Cir. 2002).

**V.      An Injunction Is in the Public Interest**

Finally, Plaintiff establishes that issuance of a preliminary injunction is in the public interest. The Tenth Circuit Court of Appeals recognizes "it is always in the public interest to prevent the violation of a party's constitutional rights." *Verlo v. Martinez*, 820 F.3d 1113, 1127 (10th Cir. 2016); *citing Pacific Frontier v. Pleasant Grove City*, 414 F.3d 1221, 1237 (10th Cir. 2005); *see also Utah Licensed Bev*., 256 F.3d at 1076; *Elam Constr., Inc. v. Regional Transp. Dist*., 129 F.3d 1343, 1347 (10th Cir.1997). The vaccine is experiential, and an individual is not required by law to receive a vaccine in the experiential stage. It is in the public interest to not allow government to mandate what we put into our bodies, especially when dealing with an experiential vaccine for which we do not know the long-term effects.

<u>**CONCLUSION**</u>

French mathematician and philosopher, Blaise Pascal, stated that *"[j]ustice without force is powerless; force without justice is tyrannical*." This Court should give force to justice and for all the foregoing reasons, Plaintiffs respectfully request this Court grant a Temporary Restraining Order.

Respectfully submitted this 19th day of August 2021.

WESTERN AGRICULTURE, RESOURCE
AND BUSINESS ADVOCATES, LLP

<u>/s/ A. Blair Dunn</u>
A. Blair Dunn, Esq.
Jared R. Vander Dussen, Esq.
400 Gold Ave SW, Suite 1000
Albuquerque, NM 87102
(505) 750-3060
abdunn@ablairdunn-esq.com
warba.llp.jared@gmail.com

## CERTIFICATE OF SERVICE

I hereby certify that on August 19, 2021, I filed the foregoing via the CM/ECF filing system causing

all parties of record to be served via electronic means.

*/s/ A. Blair Dunn*
A. Blair Dunn, Esq.